UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| COY'S HONEY FARM, INC., ) | |
| ) | |
| Plaintiff, ) | MDL No.:1:18-md-02820-SNLJ |
| ) | |
| v. ) | Case No. 1:21-CV-089-SNLJ |
| ) | |
| BAYER CORPORATION; BAYER U.S., ) | |
| LLC; BAYER CROPSCIENCE Arkansas ) | |
| Inc.; BASF CORPORATION; and BASF ) | |
| SE ) | |
| | |
| Defendants. | |

## MEMORANDUM AND ORDER

Plaintiff Coy's Honey Farms, Inc., is a beekeeping and honey-producing operation based near Jonesboro, Arkansas. Plaintiff alleges that dicamba-based herbicide products, including those produced by defendants Monsanto and BASF[1], moved away from the targeted dicamba-tolerant ("DT") plants and damaged non-tolerant vegetation surrounding plaintiff's beekeeping operation. Plaintiff alleges this resulted in reduced honey production and loss of bees. Defendants move for Summary Judgment on six grounds which may be summarized as follows: first, plaintiff lacks standing because of failure to contract for the land; second, plaintiff failed to demonstrate Defendants' products caused the alleged damages; third, plaintiff failed to prove the claimed damages; fourth, plaintiff lacks privity; fifth, the Lanham Act claims are insufficient; sixth, and finally, there are no grounds for punitive damages. [Doc. 59]. Each of these

---

[1] Named defendants are BASF Corporation, BASF SE, Bayer Corporation, Bayer U.S., LLC, and Bayer Cropscience Arkansas Inc. Monsanto was acquired by Bayer during the course of this MDL. The Court will refer to the defendants as BASF and Monsanto for clarity.

matters is fully briefed. For the reasons stated below, this Court will partially grant and partially deny summary judgment.

## I. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). *See Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). Although the Court needs to consider cited materials, "it may consider other materials in the record" as well. Fed. R. Civ. Pro. 56(c)(3).

## II. Application

### A. Standing Regarding Contracting for the Land

Defendants' first argument that plaintiff "did not own, lease, or hold any property interest in the locations where it placed hives for commercial honey and wax production," goes to the heart of standing. [Doc. 60 at 5]. Plaintiff contends, however, that that there was an oral contract that allowed Coy's Honey Farm to place hives on the properties in question, and that honey was the alleged consideration. [Doc. 82 at 3 and 6-7]. Richard Coy himself even described the honey as "rent payment" in his deposition. [Doc. 71-3]. It is also true, however, as defendants note, that Bobby Coy admitted that "Coy's did not own or lease any of that land." [Docs. 81 at 3 and 61-3 at 21-22]. This conflict concerns a material fact that is disputed, so that summary judgment on this issue will be denied.

### B. Failure to Prove Causation

Defendants correctly state that "a plaintiff fails to establish causation as a matter of law if there is insufficient evidence 'to establish a causal connection between the negligence of the defendant and the damage,'" citing *Ouachita Wilderness Inst., Inc. v. Mergen*, 947 S.W.2d 780, 785 (Ark. 1997). *See* [Doc. 60 at 23]. What *Ouachita Wilderness* actually says in full, however, is that "<u>Proximate cause is usually an issue for the jury to decide</u>, and when there is evidence to establish a causal connection between the negligence of the defendant and the damage, <u>it is proper for the case to go to the jury</u>." *Ouachita Wilderness Inst., Inc.*, 947 S.W.2d at 785, (emphasis added). Here, the record shows that there is sufficient evidence of causation, so a jury should decide the issue.

Defendants' contention is that "plaintiff failed to show that OTM [off-target

3

movement] of Engenia or XtendiMax actually caused reductions in plaintiff's honey or wax production." [Doc. 60 at 24]. Specifically, defendants explain that plaintiff simply assumes and speculates that "(1) native vegetation near Plaintiff's hives sustained damage in 2018; (2) the native vegetation was damaged by OTT dicamba; (3) the OTT dicamba products that caused damage were XtendiMax and Engenia; (4) plaintiff's production plummeted in 2018; and (5) plaintiff's reduction in production was caused by dicamba." *Id*. at 26. Most of these arguments are really challenges to plaintiff's experts' testimony, which this Court denied in its rulings on defendants' motions to exclude that testimony. The experts' testimony, when coupled with plaintiff's own testimony to the amount of reduction in production, is sufficient evidence of causation.

Defendants also contend that "plaintiff broke the chain of causation by moving its operations" by its "unilateral decision to pack up and move out of Arkansas after 2018." *Id*. at 26. This argument is also controverted by plaintiff's testimony that it was forced to move its operations out of state due to the reduction in production. *See* [Doc. 74 at 2]. Again, this is a contested fact for the jury.

### C. Plaintiff Failed to Prove Damages

Whether the plaintiff has sufficient evidence to establish damages is problematic. Defendants state that the specific methodology to calculate lost profits from damages to crops is:

> the difference in the fair market value between the crop that the land would otherwise have produced and the crop that was actually produced, less the difference between what it would have cost to have produced, harvested, and marketed and undamaged crop and what it did cost to produce, harvest,

4

and market the actual crop.

Ark. Model Jury Instruction, Civil 2226. *See* [Doc. 60 at 15]. In this scenario, damages are calculated by "the actual value of the crops at the date of the injury, plus legal interest," wherein the jury considers "the probable value at maturity…but for the actions of the defendant." *Dickerson Const. Co., Inc. v. Dozier*, 584 S.W.2d 36, 41 (Ark. 1979). "Fair Market Value" is defined as "the price that the (description of property) would bring on the open market in a sale between a seller who is willing to sell and a buyer who is willing and able to buy after a reasonable opportunity for negotiations." Ark. Model Jury Instructions, Civil 2221.

Defendants complain that Coy's Honey Farm failed to "calculate the fair market value of its 'expected' or 'actual' crop in **Arkansas** for 2018 and did not produce sufficient records or information to perform either calculation." [Doc. 82 at 57] (emphasis in original). To be sure, plaintiff's calculations are too difficult to ascertain from the briefing without recourse to plaintiff's statement of uncontroverted facts. But it does appear that plaintiff's methodology is consistent with determining the fair market value of the expected honey crop versus the fair market value of the crop actually produced. Concerns about the accuracy of the calculations and numbers are more properly addressed through cross-examination.

Defendants also contend that "in its damages calculation, plaintiff did not deduct saved costs," that is, costs saved because of the reduced crop. [Doc. 82 at 57]. Whether it was more or less expensive to harvest the crop of lesser quality is a concern for cross-examination, as is whether plaintiff properly calculated potential costs saved when

5

calculating damages. These are fact questions for the jury.

### D. Plaintiff Lacks Privity

Defendants also complain that there is a lack of contractual privity between plaintiff and defendants. That is, "that Plaintiff did not use, purchase, or otherwise acquire Engenia or XtendiMax." [Doc. 60 at 33]. This argument is easily refuted by Ark. Code § 4-86-101:

> The lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods.

(emphasis added). The plaintiff, here, was arguably a person whom the seller might reasonably have expected to be affected by the goods. In short, lack of privity between plaintiff and defendant is no defense.

### E. Lanham Act Claim

Defendants challenge plaintiff's Lanham Act false advertising claim first because "[p]laintiff has no evidence of false statements," and second because "[p]laintiff failed to provide evidence of causation or recoverable damages." [Doc. 60 at 34-35]. Both arguments fail.

Plaintiff's false advertising claim is based on defendants' alleged false representations that their Engenia and XtendiMax dicamba products were safe for OTT use. Specifically, plaintiffs say that defendants represented to soybean and cotton growers that their dicamba products would not volatilize and spread to surrounding areas

6

after being applied to the intended target of soybean and cotton fields.  This mislead dicamba purchasers, plaintiff explains, who then sprayed dicamba OTT, which then volatized over an immense area.  This allegedly resulted in the destruction of a great deal of plant habitat for the honeybees, and, in turn, caused the bees to produce less honey.  Thence, plaintiff profited less.  Plaintiff has produced sufficient evidence at least to establish a fact question on these allegations, and as discussed supra.  [Doc. 74].

Defendants also contend that plaintiff is not entitled to bring a false advertising claim without "evidence that the challenged statements caused 'direct diversion of sales from itself to defendant' or 'loss of goodwill associated with its products.'"  [Doc. 60 at 35] (internal citation omitted).  Inexplicably, defendants ignore this Court's ruling in this very case:

> The Supreme Court explicitly stated that "although diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising, it is not the only type of injury cognizable under § 1125(a)."  *Id*. at 138.  *Lexmark* held that a plaintiff must "allege an injury to a commercial interest in reputation or sales proximately caused by the defendant's misrepresentations."  572 U.S. at 140.  That is, a Lanham plaintiff must be a commercial actor suffering commercial injuries instead of being a "consumer who is hoodwinked into purchasing a disappointing product."  *Id*. at 132.

[MDL Doc. 302 at 8-9], *In re: Dicamba Herbicides Litigation*, 359 F.Supp.3d 711, 721 (E.D. Mo. 2019).  Here, there is no question that plaintiff is a commercial actor, and plaintiff has alleged a loss in sales due to defendants' misrepresentations.  Summary judgment will not be granted on this claim.

### F.  Punitive Damages.

For multiple reasons, defendants argue that punitive damages are inappropriate in

7

this case. [Doc. 60]. Plaintiff did not respond to this argument, and thus tacitly concedes the point. [Doc. 74]. And in any event, suffice it to say that this Court agrees with defendants on the merits of the argument.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to grant summary judgment [Doc. 59] is DENIED on all issues except that summary judgment is GRANTED on the issue of punitive damages.

Dated this 25th day of March, 2025.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE